OFFIT KURMAN, P.A.
Michael T. Conway, Esq.
590 Madison Avenue, Sixth Floor
New York, New York 10016
Telephone: (929) 476-0041
Facsimile: (212) 545-1656
Michael.Conway@OffitKurman.com

Proposed Counsel for Debtor and Debtor in Possession

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
_____

In re:                                                                                          Case No:

FANCHEST, INC.,                                                                      Chapter 11

            Debtor.

_____

## AFFIDAVIT OF JAMES WALTZ PURSUANT TO
## LOCAL BANKRUPTCY RULE 1007-4

I, James Waltz, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.      I am the President and Chief Executive Officer of Fanchest, Inc., a Delaware corporation ("Fanchest" or the "Debtor"). I am knowledgeable and familiar with the business and financial affairs of the Debtor. I am above 18 years of age and I am competent to testify.

2.      I submit this Affidavit in accordance with Rule 1007-4 of the Local Bankruptcy Rules for the Eastern District of New York (the "Local Bankruptcy Rules") to assist this court (the "Court") and parties in interest in understanding the circumstances that compelled the commencement of this Chapter 11 Case and in support of (a) the Debtor's petition for relief under chapter 11 of the Bankruptcy Code.

3.      Except as otherwise indicated, all facts set forth in this Affidavit are based upon my personal knowledge, my discussions with other members of the Debtor's management team

and the Debtor's advisors, my review of relevant documents and information concerning the Debtor's operations, financial affairs, and restructuring initiatives, or my opinions based upon my experience and knowledge. I am authorized to submit this Affidavit on behalf of the Debtor.

4. On November 5, 2020 (the "Petition Date"), the Debtor commenced a case under subchapter V of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

5. The Debtor is a small business debtor within the meaning of Bankruptcy Code § 101(51D).

6. The Debtor is not a single asset real estate debtor within the meaning of Bankruptcy Code § 101(51B).

**I.  The Debtor's Business.**

7. Until the filing of the present Bankruptcy Case, the Debtor's business has involved purchasing and reselling sports team-branded soft and hard consumer goods, primarily holding these goods in third-party fulfillment centers and using these fulfillment centers to package and ship the goods on sale.

**II.  Events Leading to the Chapter 11 Case.**

8. Due to the COVID-19 pandemic, business came to an abrupt stop for the Debtor.

9. Given the lack of sales, payments to the Debtor's secured creditors and fulfillment center partners became extremely problematic.

10. The fulfillment center holding a majority of the Debtor's assets, Fosdick Fulfillment Corporation, filled an interpleader action based on the claim that payments due had not been received.

11. The Debtor began negotiating a resolution with its secured creditors, Phoenix Growth Capital LLC and Helix Digital Inc. prepetition and believed it had reached a resolution;

the parties had agreed to a process whereby the goods stored with Fosdick Fulfillment Corporation would be moved to another fulfillment center and sold through a partnership between Phoenix Growth Capital LLC and the Debtor with a percentage of sales used to pay down the debt owed to Helix Digital Inc.

12. Unfortunately, it recently became clear that Phoenix Growth Capital LLC was negotiating in bad faith and, in fact, it had secretly used this time to misappropriate the Debtor's PPP loan which it had previously acknowledged was not to be used for the purpose of paying this obligation.

13. To make matters worse, last week it was discovered that the inventory held with Molly Fulfillment & Packaging in Florida had improperly been taken and sold off without notice to the Debtor and based on the above, the Debtor resolved to file this case (see <u>Exhibit 1</u> hereto).

### III.     The Objectives of this Chapter 11 Case.

14. The Debtor has filed this chapter 11 case to ensure a fair and equitable distribution to its creditors and a continuation of the Debtor's business post-reorganization.

15. The Debtor has built a well-respected brand with consumers and within the sports retailing industry over several years, but hasn't utilized the ecommerce marketplaces such as Amazon and Walmart.com. Moving forward, the Debtor intends to list and sell its existing and future inventory predominantly through those marketplaces for maximum revenue and margin at minimal upfront cost.

16. The Debtor will also look to partner with sports marketing teams, leagues and relationships as a business to business gifting and fulfillment resource, with much higher revenue per order values and higher long-term margin.

17. Moreover, the Debtor intends to litigate with Phoenix Growth Capital LLC

concerning the improper taking of the Debtor's PPP loan and over the fate of the inventory that is, as of the date of this filing, held with Fosdick Fulfillment Corporation, and with Molly Fulfillment & Packaging over the misappropriation of the inventory held in that fulfillment center.

18. Ultimately, the Debtor expects to recover an amount sufficient to pay its secured creditors whatever is due on their claims and provide a dividend to the unsecured creditors.

### IV. Other Information Required by Local Rule 1007-4.

19. Jurisdiction and venue before this Court is proper. The principal place of business of the Debtor is located in the State of New York, New York County. Specifically, all of the Debtor's personal property is located in the premises formerly leased at 320 Eighth Avenue New York, New York 10019. This location has always served as its principal place of business.

20. No case has been previously commenced against the Debtor under chapters 7, 11, or 13 of the Bankruptcy Code.

21. No creditors' committee was organized before the Petition Date.

22. The Debtor's secured the unsecured creditors excluding insiders are accurately set forth in Schedules D, E and F, previously filed as Docket Number 1, which is incorporated here by reference as if fully restated here.

23. The information with respect to each of the holders of the twenty (20) largest unsecured claims, excluding insiders, is accurately set forth in the Debtor's Form 204, previously filed as Docket Number 1, which is incorporated here by reference as if fully restated here.

24. The information with respect to each of the holders of the five (5) largest secured claims is accurately set forth in the Schedule D, previously filed as Docket Number 1, which is incorporated here by reference as if fully restated here. The claims of Fosdick Fulfillment Corporation and Phoenix Growth Capital LLC are in dispute.

25. A summary of the Debtor's assets and liabilities are accurately set forth in Form 206Sum, previously filed as Docket Number 1, which is incorporated here by reference as if fully restated here.

26. The Debtor has issued no classes of shares of stock, no debentures, or other securities that are publicly held.

27. The Debtor's property in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents, or secured creditor, or agent for any such entity, includes approximately $1,5 million in inventory currently stored with Fosdick Fulfillment Corp. and at issue in a pending interpleader action filed in the Connecticut Superior Court, Judicial District of New Haven at Meriden, bearing case number NNI-CV20-6020421-S.

28. As described above and in Form 206G, previously filed as Docket Number 1, which is incorporated here by reference as if fully restated here, there is Inventory storage and fulfillment and shipping agreement that exists between Debtor and Fosdick Fulfillment Corp. and approximately $1,5 million in inventory is currently stored with this entity.

29. The Debtor has significant assets currently stored with Fosdick Fulfillment Corporation at its facility in Berlin, CT and had significant assets .

30. The Debtor's books and records are currently at the Debtor's headquarters in Brooklyn, NY.

31. The Debtor does not have any assets held outside the territorial limits of the United States.

32. Other than as set forth above, is no current known action or proceeding, pending or threatened, against the Debtor or its property where a judgment against the Debtor or a seizure of its property may be imminent.

33. I am currently the sole officer and director of the Debtor. I am the individual who serves as the Debtor's existing senior management, I have served in this capacity since approximately December 2019. I have served as senior executive to numerous advertising and marketing technology companies over 25 years and servicing hundreds of ecommerce clients during that tenure. I have also run Nextag Inc., a large ecommerce comparison shopping business.

34. As a result of the current pandemic, the Debtor was forced to furlough its only employee other than me. Although the Debtor received money through the PPP loan program, these funds were subsequently misappropriated by Phoenix Capital Management LLC. If the Debtor can recover these funds, it will be able to rehire its former employee or hire someone in their stead. Currently I am working without pay and so there is no expectation of that the Debtor will incur payroll expense for the thirty (30) day period following the filing of the chapter 11 petition.

35. The Debtor does not expect to pay any amount for services for the 30-day period following the filing of the chapter 11 petition.

36. Because the Debtor has ceased operations pending a resolution of its claims with Fosdick Fulfillment and Phoenix Capital Growth, I do not expect any estimated cash receipts or disbursements, net cash gain or loss, obligations or receivables to accrue but remaining unpaid, other than professional fees, for the 30-day period following the filing of the chapter 11 petition.

37. The Debtor's inventory is currently covered by the policy obtained by Fosdick Fulfillment Corporation. Otherwise, the only policy of insurance currently in place relating to the Debtor is a Directors and Officers Policy issued by Scottsdale Insurance Company, policy number xxxxxx2091.

38. Currently, the only bank account held by the Debtor is its checking account with

Silicon Valley Bank, 387 Park Ave. South, 2nd Floor, New York, NY 10016, account number xxxxxx1622

39. No financial or business consultant has been retained as of yet by the Debtor.

Dated: November 6, 2020

                                                                                                           _____

                                                                                                             James Waltz

EXHIBIT 1

## UNANIMOUS WRITTEN CONSENT OF
## THE BOARD OF DIRECTORS OF
## FANCHEST, INC.

The undersigned, being the sole director of Fanchest, Inc., a Delaware corporation (the "Corporation"), by his signature below, hereby adopts the following resolutions on behalf of the Corporation, pursuant to the General Corporation Law of the State of Delaware (the "General Corporation Law") and the By-laws of the Corporation (the "By-laws"):

**WHEREAS**, having examined the alternatives presently available to the Corporation and concluded that there are no feasible alternatives for the protection and recovery of the Corporation's assets other than the commencement of a case under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), the Board of Directors has concluded that it is in the best interests of the Corporation and its creditors to proceed as described in these resolutions;

**NOW, THEREFORE, BE IT RESOLVED** that, subject to the condition described below, a Petition under the provisions of Chapter 11 of the Bankruptcy Code shall be filed by the Corporation with the United States Bankruptcy Court for the Eastern District of New York, on November 6, 2020, or the first date possible thereafter; and be it

**FURTHER RESOLVED**, that, subject to the condition described below, the following officer (the "Authorized Officer")

**James Waltz -** Chief Executive Officer

hereby is authorized, empowered and directed on behalf of and in the name of the Corporation to execute a Chapter 11 bankruptcy petition and all related documents and papers on behalf of the Corporation in order to enable the Corporation to commence a Chapter 11 bankruptcy case and to cause the same to be filed with the United States Bankruptcy Court for the Eastern District of New York; and be it

**FURTHER RESOLVED** that each of the Authorized Officer hereby is authorized, empowered and directed to execute and file all petitions, schedules, lists, and other papers in connection with the Corporation's bankruptcy case, and to take any and all action which he may deem necessary and proper in connection with such bankruptcy case and to retain and employ legal counsel and any other professional or professionals which he may deem necessary and proper; and be it

**FURTHER RESOLVED** that the Corporation may retain the law firm of Offit Kurman, P.A. as bankruptcy counsel for the Corporation for purposes of, among other things, representing the Corporation in connection with its Chapter 11 case, subject to Bankruptcy Court approval; and be it

**FURTHER RESOLVED** that the Corporation may retain a consulting firm as

financial advisor to the Corporation for purposes of, among other things, advising the Corporation in connection with its Chapter 11 case, subject to Bankruptcy Court approval; and be it

**FURTHER RESOLVED**, that the Authorized Officer of the Corporation hereby is authorized, empowered and directed to negotiate, execute and deliver, for and on behalf of the Corporation, agreements with potential lenders or other third parties, as appropriate, in form and substance satisfactory to such Authorized Officer (each, a "Loan Document" and collectively, the "Loan Documents"), providing for a debtor-in-possession credit facility (the "DIP Facility") in such aggregate principal amount, and use of cash collateral on such terms, as the Authorized Officer shall deem necessary to finance its Chapter 11 case, for and on behalf and in the name of the Corporation, the execution and delivery thereof being conclusive evidence that such Loan Documents were executed pursuant to this resolution; and be it

**FURTHER RESOLVED**, that the Authorized Officer of the Corporation hereby is authorized, empowered and directed to perform all acts and do all things which he may deem necessary or desirable to consummate the transactions contemplated by the Loan Documents, with such modifications, amendments or further agreements, promissory notes, deeds, assignments, bills of sale, deeds of trust, mortgages, security agreements, certificates and other agreements, instruments or documents as he, in his sole discretion, may deem necessary or desirable and in the best interest of the Corporation, his taking of any such action, for and on behalf and in the name of the Corporation, and/or his execution and delivery, for and on behalf and in the name of the Corporation, of any such agreement, instrument or document to be conclusive evidence that he did so deem the same to be necessary or desirable and in the best interest of the Corporation; and be it

**FURTHER RESOLVED**, that the Authorized Officer of the Corporation hereby is authorized, empowered and directed to certify and attest any documents which he may deem necessary or appropriate to consummate the transactions contemplated by the Loan Documents; provided that such certification or attestation shall not be required for the validity of the particular document; and be it

**FURTHER RESOLVED,** that the Authorized Officer hereby is authorized, empowered and directed, in the name and on behalf of the Corporation, to execute and deliver all such further documents, instruments, certificates or agreements, and to take all such further action and to incur and pay all such expenses, as such Authorized Officer may approve as necessary, proper, convenient or desirable in order to carry out the foregoing resolutions and fully to effectuate the purposes and intents thereof, the execution and delivery of any such documents, certificates, agreements or instruments, and the taking of any such action and the incurrence and payment of any such expenses, to be conclusive evidence that the same shall have been approved hereby; and be it

**FURTHER RESOLVED,** that all actions taken by the officers of the Corporation to date, in connection with the foregoing resolutions or the transactions

contemplated thereby, be, and each hereby is, confirmed, ratified and approved in all respects.

This Unanimous Written Consent shall be filed in the Minute Book of the Corporation and become a part of the records of the Corporation. This Unanimous Written Consent may be executed in counterparts. A facsimile shall be deemed an original.

IN WITNESS WHEREOF, the undersigned executed and delivered this Written Consent as of November 6, 2020.

_____
James Waltz