**Hearing Date and Time: December 17, 2020 at 3:30 p.m. (Prevailing Eastern Time)**
**Opposition Date and Time: December 16, 2020 at 4:00 p.m. (Prevailing Eastern Time)**

OFFIT KURMAN, P.A.
Michael T. Conway, Esq.
590 Madison Avenue, Sixth Floor
New York, New York 10016
Telephone: (929) 476-0041
Facsimile: (212) 545-1656
Michael.Conway@OffitKurman.com

*Proposed Counsel for Debtor and Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
_____

In re:                                                          Case No: 20-43932-jmm

FANCHEST, INC.,                                      Chapter 11

                        Debtor. [1]
_____

### NOTICE OF DEBTOR'S EMERGENCY MOTION, PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, AND 1107, FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR TO UTILIZE CASH COLLATERAL, SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b); AND GRANTING RELATED RELIEF

**PLEASE TAKE NOTICE** that a hearing on the *Debtor's Emergency Motion, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 1107, for Entry of Interim and Final Orders Authorizing Debtor to Utilize Cash Collateral, Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(B); and Granting Related Relief* [will be heard on **December 17, 2020, at 3:30 p.m. (Prevailing Eastern Time)**, before the Honorable Jil Mazer-Marino, United States Bankruptcy Judge. Each Party that intends to participate in a telephonic hearing must email the Courtroom Deputy at JMM_hearings@nyeb.uscourts.gov at least one business day before the scheduled

_____

[1] (Federal Tax Id. No. xx-xxx 3182).

hearing and provide the party's name, email address, and telephone number.  Attorneys must also identify the party the attorney represents.

      **PLEASE TAKE FURTHER NOTICE** that any response or objection to the Motion must be filed with the Bankruptcy Court and received in the chambers of the Honorable Jil Mazer-Marino, U.S. Bankruptcy Court, Eastern District of N.Y., Conrad B. Duberstein U.S. Courthouse, 271-C Cadman Plaza East, Suite 1595, Brooklyn, NY 11201-1800, not later than **4:00 p.m. on December 16, 2020 (Prevailing Eastern Time).** The ECF docket number to which the filing relates shall be included in the upper right-hand corner of the caption of all objections. Unless objections are received by that time, the Proposed Order may be signed.

Dated: December 10, 2020
      New York, New York

                     OFFIT KURMAN, P.A.


                By:  /s/ Michael T. Conway
                     Michael T. Conway
                     590 Madison Avenue, 6th Floor
                     New York, New York 10016
                     Telephone: (929) 476-0041
                     Facsimile: (212) 545-1656
                     Michael.Conway@OffitKurman.com

                     *Proposed Counsel for Debtor and Debtor in Possession*

OFFIT KURMAN, P.A.
Michael T. Conway, Esq.
590 Madison Avenue, Sixth Floor
New York, New York 10016
Telephone: (929) 476-0041
Facsimile: (212) 545-1656
Michael.Conway@OffitKurman.com

*Proposed Counsel for Debtor and Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| In re: | Case No: 20-43932-jmm |
| FANCHEST, INC., | Chapter 11 |
| Debtor. [1] | |

_____

### DEBTOR'S EMERGENCY MOTION, PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, AND 1107, FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR TO UTILIZE CASH COLLATERAL, SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b); AND GRANTING RELATED RELIEF

Fanchest, Inc. (the "Debtor"), by and through its undersigned proposed counsel, respectfully submits this motion (the "Motion"), pursuant to sections 105(a), 361, 362, 363(a), 363(c)(2)(3), 363(e), and 1107(a) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 2002, 4001(b), and 9014 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and Rule 4001-5 of the Local Rules (the "Local Rules") of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") for the entry of interim (the "Interim Order") and final orders (the "Final Order" and, together with the Interim Order, the "Cash Collateral Orders"), *inter alia*, (i) authorizing the Debtor to utilize cash collateral, and (ii) scheduling a final

_____

[1] (Federal Tax Id. No. xx-xxx 3182).

hearing pursuant to Bankruptcy Rules 4001(b). In support of the Motion, the Debtor respectfully represents as follows:

### Jurisdiction And Venue

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      The statutory predicates for the relief sought herein are sections 105(a), 361, 362, 363(a), 363(c)(2)(3), 363(e), and 1107(a) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(b) and 9014, and Local Rule 4001-5.

### Background

3.      On November 6, 2020 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

4.      The Debtor has continued in possession of its properties and is operating and managing its businesses as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      No request has been made for the appointment of a trustee or examiner, and a creditors' committee has not been appointed by the Office of the United States Trustee for the Eastern District of New York (the "U.S. Trustee").

6.      The Bankruptcy Court and interested parties are respectfully referred to (i) the *Affidavit of James Waltz Pursuant to Local Bankruptcy Rule 1007-4* dated November 6, 2020 (the "Waltz Declaration") [2] for a detailed discussion regarding the Debtor, its operations, and the events leading to the filing of this chapter 11 case (the "Chapter 11 Case").

7.      Until the filing of the present Bankruptcy Case, the Debtor's business has involved purchasing and reselling sports team-branded soft and hard consumer goods, primarily holding these goods in third-party fulfillment centers and using these fulfillment centers to package and ship the goods on sale.

8.      Due to the COVID-19 pandemic, business came to an abrupt stop for the Debtor. Given the lack of sales, payments to the Debtor's secured creditors and fulfillment center partners became extremely problematic.

9.      The fulfillment center holding a majority of the Debtor's assets, Fosdick Fulfillment Corporation ("Fosdick"), filed an interpleader action based on the claim that payments due had not been received (the "Interpleader Action").

10.      The Debtor began negotiating a resolution with its secured creditors, Fosdick (which has a secured claim based on a warehouseman's lien) Phoenix Growth Capital LLC ("Phoenix") and Helix Digital Inc. ("Helix") prepetition and believed it had reached a resolution; the parties had agreed to a process whereby the goods stored with Fosdick would be moved to another fulfillment center and sold through a partnership between Phoenix and the Debtor with a percentage of sales used to pay down the debt owed to Helix. Just prior to the filing of this Chapter 11 Case, the Debtor learned in its negotiations with Phoenix that Phoenix had taken all of its cash, almost entirely proceeds of a PPP loan issued under the Cares Act, despite promises that it would not do so made to James Waltz.

11.      The Debtor's PPP funds were meant to (a) allow the Debtor to pay the Fosdick claim and release the Debtor's inventory; and (b) allow the Debtor to rehire staff and restart the commercial sale of its substantial inventory which, in turn, would allow it to pay its creditors. The book value of this inventory is in excess of $2,871,400, although Phoenix disputes that the market value of the inventory is this high. Nonetheless, the market value of the inventory is well in excess of the Cash Collateral making Phoenix over-secured.

12.      Ultimately, Phoenix moved in the Interpleader Action for an order allowing it to remove

the inventory from the Fosdick warehouse. The Debtor did not oppose this motion and, in fact, continued to negotiate with Fosdick regarding the claim which, although not liquidated, was estimated in an amount requiring a $150,000 bond before the Connecticut state court will allow the inventory to be moved by Phoenix.

13.     Since the filing of this Chapter 11 Case, the Debtor, with the help of the subchapter V Trustee, Eric Huebscher, has attempted to resolve the Interpleader Action (among other issues) and Fosdick ultimately agreed to reduce its claim to $50,000 if the inventory was removed from its warehouse by December 18, 2020.

14.     Mr. Huebscher confirmed with Phoenix that it was still holding the Debtor's cash and it had not been comingled with its own. He also explained to Phoenix that taking the PPP funds was improper and suggested a resolution that Phoenix return the $50,000 needed to resolve the Fosdick claim to the Debtor for this purpose, which would in turn benefit Phoenix in that the proceeds of sale of this inventory would be used first to pay down the Phoenix debt and absent this agreement, Phoenix would need to post a $150,000 bond to remove this inventory, then litigate the amount of the Fosdick claim. Phoenix indicated it would consider this but required assurances from the Debtor that it would cover the costs of moving the inventory, storing it and selling it. These assurances were given, but Phoenix still refused to return the Debtor's cash, necessitating this Motion.

15.     The Debtor believes that upon an order that Phoenix return the cash collateral it took, without notice and if the face of promises it would not do so, in the amount of $138,119, or even the lesser amount of the PPP loan the Debtor received in the amount of $135,611.93 (in either case, the "Cash Collateral"), it will have sufficient funds to successfully reorganize and create a vehicle for getting Phoenix paid in full, and a dividend paid to each of its other creditors.[2]

---

[2] James Waltz, who owns Helix, has indicated a wiliness to subordinate the Helix claim to an amount sufficient to pay the unsecured creditors what they would otherwise receive under a subchapter V of chapter 11 of the Bankruptcy Code.

## <u>Compliance with Local Rule 4001-5</u>

16.     Local Rule 4001-5(a) requires that certain provisions contained in the Interim Order

be highlighted, and that the Debtor must provide justification for the inclusion of such highlighted

provision(s).

(i)     <u>Local Rule 4001-5(a)(i)</u>: This Motion and the Cash Collateral Orders set forth the amount of cash collateral the Debtor seeks permission to use.

(ii)    <u>Local Rule 4001-5(a)(ii)</u>: This rule is not applicable.

(iii)   <u>Local Rule 4001-5(a)(iii)</u>: This rule is not applicable.

(iv)    <u>Local Rule 4001-5(a)(iv)</u>: This Motion and the Cash Collateral Orders contains provisions regarding the Fosdick and Phoenix liens and granting adequate protection, additional or replacement liens to the secured parties. Helix is not requiring additional adequate protection.

(v)     <u>Local Rule 4001-5(a)(v)</u>: This rule is not applicable

(vi)    <u>Local Rule 4001-5(a)(vi)</u>: This rule is not applicable

(vii)   <u>Local Rule 4001-5(a)(vii)</u>: This rule is not applicable

(viii)  <u>Local Rule 4001-5(a)(viii)</u>: This rule is not applicable

(ix)    <u>Local Rule 4001-5(a)(ix)</u>: This rule is not applicable

(x)     <u>Local Rule 4001-5(a)(x)</u>: This rule is not applicable

(xi)    <u>Local Rule 4001-5(a)(xi)</u>: This rule is not applicable

(xii)   <u>Local Rule 4001-5(a)(xii)</u>: This rule is not applicable

(xiii)  <u>Local Rule 4001-5(a)(xiv)</u>: This rule is not applicable

(xiv)   <u>Local Rule 4001-5(a)(xv)</u>: This rule is not applicable

(xv)    <u>Local Rule 4001-5(a)(xvi)</u>: This rule is not applicable

(xvi)   <u>Local Rule 4001-5(g)</u>: The Debtor believes that the budget (the "Budget") attached hereto as Exhibit A will be adequate, considering all available assets, to pay all administrative expenses due or accruing during the period covered by the Budget.

(xvii) <u>Local Rule 4001-5(h)</u>: Notice of a preliminary or final hearing shall be given to (1) the U.S. Trustee, (2) the Debtor's 20 largest unsecured creditors, the persons required by Bankruptcy Rules 4001(b)(3) and 4001(c)(3), as the case may be, and any other persons whose interests may be directly affected by the outcome of the Cash Collateral Motion or any provision of the Cash Collateral Orders.

### **Relief Requested and Basis Therefor**

17.　　The Motion requests, pursuant to sections 105(a), 361, 362, 363(a), 363(c)(2)(3), 363(e), and 1107(a) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(b) and 9014, and Local Rule 4001-5, (i) entry of the proposed Interim Order, substantially in the form annexed hereto as Exhibit B, requiring the return of and authorizing the Debtor's use of the Cash Collateral and the granting of adequate protection; and (iii) giving notice of the final hearing on the motion (the "Final Hearing").

18.　　The Debtor's use of the Cash Collateral, in accordance with the Budget, will enable the Debtor to continue to operate its businesses in the ordinary course and in an orderly and reasonable manner to preserve and enhance the value of its estate for the benefit of all parties-in-interest.

19.　　In terms of emergent need, the Fosdick resolution requires a payment in the amount of $50,000 by December 18, 2020. Without this payment, the inventory held by Fosdick will require the posting of a bond in the amount of $150,000 to remove and, if no resolution of the Fosdick claim occurs, the inventory held in that fulfillment center is at risk of being sold at auction for pennies on the dollar.

20.　　Moreover, because the majority of the Cash Collateral is made up of a PPP loan provided under the Cares Act, if it is used in this manner to pay the Debtor's landlord, it qualifies for full forgiveness. This alone would result in a $50,000 dividend to the Debtor's estate. However, if this payment is ***not*** made in time for the Debtor to file a request for forgiveness on December

31, 2020, this $50,000 dividend will be converted to a $50,000 repayment obligation, making any dividend to the creditors, including Phoenix, that much smaller.

21.    From the standpoint of pure logic, there is no creditor that will suffer harm by the granting of the Motion. Phoenix, the only creditor who is believed to be against the relief requested, would be forced to pay $150,000 to remove the inventory if no resolution is reached with Fosdick as set forth herein. This clearly exceeds the amount of the Cash Collateral and would be a waste not just of the Debtor's assets, but of those of Phoenix. Conversely, if Phoenix were to negotiate its own resolution of the Fosdick claim and pay $50,000 of the Cash Collateral directly to Fosdick, assuming Fosdick would consider this, the net result would be that the Debtor's estate would lose the benefit of the PPP forgiveness and be forced to repay this amount as a loan going forward to the detriment of all creditors.

22.    Similarly, the ability to use the Cash Collateral would allow the Debtor to pay a relatively *de minimis* amount to the Molly Fulfillment center in Florida which holds additional Debtor inventory. This would require, as described by the subchapter V Trustee, an amount of less than $7,500 to pay the Molly Fulfillment claim and ship the inventory to whatever location the Debtor instructs. While no deadline has been placed on this resolution by the Molly Fulfillment center, it is likely not "on the table" for long and the same PPP forgiveness issue applies.

23.    Additionally, the availability of Cash Collateral will also provide confidence to the an entity currently in discussions with the Debtor to potentially serve as a DIP lender in an amount that would be used to pay the Phoenix claim, leaving only one secured creditor, Helix, which has indicated a willingness to subordinate in an amount sufficient to repay Debtor's unsecured creditors in an amount to be determined, but based on a formula which results in a dividend equaling all of the projected disposable income of the Debtor to be received in the three-year

period, or such longer period not to exceed five years as the Court may fix, beginning on the date that the first payment is due under the Plan of Reorganization to be filed by the Debtor. See Accompanying December 10, 2020 Declaration of James Waltz, ¶ 6.

24.    In short, the Debtor has the broad strokes of a solution which will, at a minimum, pay the Phoenix, Fosdick and Molly claims in full, and provide a dividend to the unsecured creditors. There is absolutely no benefit to any creditor, including Phoenix, to a denial of the Motion and, in fact, a denial of the Motion could succeed to pushing the Debtor closer to liquidation, which would result in a partial recovery to Phoenix, but a zero recovery to every other creditor of the Debtor's estate.

### A. The Debtor Should Be Authorized to Use Cash Collateral

25.    A debtor-in-possession may be authorized to use cash collateral in the ordinary course of its business operations under Bankruptcy Code §§ 363(c) and 1107(a).

26.    Courts repeatedly have recognized that use of cash collateral is appropriate where necessary to preserve a debtor's ability to reorganize and thus maximize the value of an estate for all interested parties. See In re Realty Southwest Assoc., 140 B.R. 360, 366 (Bankr. S.D.N.Y. 1992); H.R. Rep. No. 595, 95th Cong., 1st Sess. 344 (1977); 3 Collier on Bankruptcy 363.03 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. Rev. 2006); see also In re Dynaco, 162 B.R. 389, 396 (Bankr. D. N.H. 1993); In re Stein, 19 B.R. 458 (Bankr. E.D. Pa. 1982). Bankruptcy Rule 4001(b) governs authorization for utilizing cash collateral and provides that the court may permit the debtor in possession to use cash collateral before a final hearing to the extent necessary to avoid immediate and irreparable harm. After a final hearing held on at least fifteen days' notice, the court may grant the authority to use cash collateral on a permanent basis and other permanent relief requested herein.

27.     A chapter 11 debtor may not use cash collateral unless "(A) each entity that has an interest in such collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

28.     The Debtor requires the use of Cash Collateral to fund its operations. In the absence of the order requiring Phoenix to return and authorization to use the Cash Collateral, the Debtor's ability to continue operating in the ordinary course of business will be jeopardized, causing immediate and irreparable harm to the Debtor's estate, its creditors, and all other stakeholders by virtue of the loss of significant going-concern value. Thus, the Debtor's use of the Cash Collateral is essential to enable the Debtor to meet the emergency obligations described above and the ordinary operating costs and expenses during the pendency of the Chapter 11 Case.

29.     The Budget demonstrates that during the initial two (2) week period after the hearing on the Motion, the Debtor anticipates that the only use of the Cash Collateral will be the approximately $80,500 it will need to secure all of the Debtor's inventory, from both the Fosdick fulfillment center and the Molly fulfillment center, in a new location in Waterbury Connecticut in or near the Amazon fulfillment center that the Debtor intends to use to sell the inventory through its Amazon storefront. In the event, after final hearing on the Motion, the Court denies further use of the Cash Collateral, the inventory which serves as security for the Phoenix claim will at least be secured in a location that avoids further litigation in the Interpleader Action and it will have been supplemented by the "Molly inventory."

30.     Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as

is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Therefore, unless Phoenix consents, the use of Cash Collateral is conditioned upon the adequate protection of its interest. *See* 11 U.S.C. §§ 363(c)(2), (e).

31.    The Bankruptcy Code does not explicitly define "adequate protection." Permissible forms of adequate protection include periodic cash payments, additional liens, replacement liens, and other forms of relief. *See* 11 U.S.C. § 361.  The third option is regarded  as  a  "catch-all" provision, affording bankruptcy court's discretion, on a case-by-case basis, to determine  what level of protection is appropriate to provide a secured lender. See  In re Swedeland Dev. Group, Inc., 16 F.3d 552, 564 (3d Cir. 1994); In re Beker Indus. Corp.. 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986).

32.    The purpose of adequate protection is to protect a secured creditor from diminution in the value of its property interest in its collateral during the period of use, sale, or lease.  See In re 495 Cen. Park, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) ("The goal of adequate protection is to safeguard the secured creditor in the value of its interest [during the chapter 11 case]"); In re Beker Indus. Corp.. 58 B.R. at 736; In re Hubbard Power & Light, 202 B.R. 680, 685 (Bankr. E.D.N.Y. 1996); In re Kain, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); see also Delbridge v. Production Credit Assoc. and Fed. Land Bank, 104 B.R. 824, 827-28 (E.D. Mich. 1989); In re Ledgemere Land Corp., 116 B.R. 338, 343 (Bankr. D. Mass. 1990). The appropriate form  of adequate protection must be determined on a case-by-case basis. See In re O'Connor, 808  F.2d 1393, 1396 (10th Cir. 1987); In re Martin, 761 F.2d 472, 474 (8th Cir. 1985). Accordingly, this Court has discretion to determine what level of protection is appropriate to provide Phoenix. See Beker Indus. Corp., 58 B.R. at 736; In re Swedeland Dev. Group, Inc., 16 F.3d at  564.

33.    As set forth in the Interim Order, Phoenix will receive adequate protection of its

prepetition interests in the Cash Collateral in the form of (a) preservation or enhancement of its collateral's value through the Debtor's ability to recover the inventory from the Fosdick fulfillment center and the Molly fulfillment center for amounts far less than Phoenix could do so on its own, and (b) the sale of this inventory on ordinary commercial terms rather than through a bulk sale, auction-type scenario where the Debtor's inventory would likely be sold for a small fraction of its market value, all with the benefit of oversight by the subchapter V Trustee (collectively, the "Adequate Protection"). See In re Megan-Racine Assocs. Inc., 202 B.R. 660, 663 (Bankr. N.D.N.Y. 1996) ("As long as there was a continuous income stream being generated by the Debtor, the fact that the Debtor consumed a portion of those monies to operate and maintain the Facility each month did not diminish the value of the FDIC's interest in the Collateral."); In re Mullen, 172 B.R. 473, 477 (Bankr. D. Mass. 1994) ("A receivable . . . lender does not lack adequate protection, even if it is undersecured, so long as the value of the stream of future accounts or inventory and their proceeds is not declining.")(citations omitted); In re 499 W. Warren St. Assocs., Ltd. P'ship, 142 B.R. 53, 57 (Bankr. N.D.N.Y. 1992) ("A secured creditor's interest in the collateral itself is adequately protected when a portion of the rents are applied to its operation and maintenance," citing In re Pine Lake Village Apartment Co., 16 B.R. 750, 756 (Bankr. S.D.N.Y. 1982)). There is no need for any additional adequate protection where continued post-petition operation of the Debtor's businesses poses no serious danger of decline. See In re Pursuit Athletic Footwear, Inc., 193 B.R. 713, 716-17 (Bankr. D. Del. 1996) (finding secured creditor is adequately protected for the use of its cash collateral where the debtor operates profitably post-petition); In re Newark Airport/Hotel Ltd. P'ship, 156 B.R. 444, 450 (Bankr. D.N.J. 1993), aff'd sub nom. FGH Realty Credit Corp. v. Newark Airport/Hotel Ltd. P'ship, 155 B.R. 93 (D.N.J. 1993) (holding secured creditor's interest in hotel was adequately protected and no adequate protection

payments were necessary given the hotel's increased occupancy, the improving real estate market, and competency of current management).

34.     The Debtor's business was effectively shut down due to COVID-19, but a new fulfillment strategy, using the Amazon marketplace to make sales, will allow the Debtor to get back to profitability and serve to enhance the value of the collateral for all creditors, including Phoenix.

35.     The Debtor respectfully submits that the Adequate Protection will sufficiently protect the Lender's interests in the Cash Collateral from any diminution in value and therefore should be approved.

**B. Interim Approval Should Be Granted**

36.     Bankruptcy Rules 4001(b) provide that a final hearing on a motion to authorize use of cash collateral may not be commenced earlier than fourteen (14) days after the service of such motion. See Fed. R. Bankr. P. 4001(b). Upon request, however, the Bankruptcy Court may conduct a preliminary expedited hearing on the motion to authorize use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing. See Fed. R. Bankr. P. 4001(b).

37.     Pursuant to Bankruptcy Rule 4001(b), the Debtor respectfully requests that the Bankruptcy Court conduct an expedited preliminary hearing on this Motion and (a) order the return of and authorize the Debtor's use of the Cash Collateral on an interim basis, pending entry of the Final Order, in order to (i) maintain and finance the ongoing operations of the Debtor; and (ii) avoid immediate and irreparable harm and prejudice to the Debtor's estate, business operations and all parties-in-interest, and (b) schedule the Final Hearing.

38.     The Debtor has an urgent and immediate need for cash to continue to operate. Currently, the Debtor does not have sufficient funds with which to operate its business on an

ongoing basis. Absent authorization from this Court to use Cash Collateral, as requested, on an interim basis pending the Final Hearing, the Debtor and its estate will be immediately and irreparably harmed. The availability of Cash Collateral will provide necessary assurance of the Debtor's ability to meet their near-term obligations. Failure to meet these obligations and to provide these assurances likely would have a long-term negative impact on the value of the Debtor's business, to the detriment of all parties-in-interest. Accordingly, the interim relief requested is critical to preserving and maintaining the going concern value of the Debtor and facilitating its reorganization efforts.

39.     For the foregoing reasons, and based upon the record, including testimony that the Court might request, it is respectfully submitted that the grounds for entry of the Interim Order exist and the relief requested is necessary.

## Notice

40.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee for the Eastern District of New York, Brooklyn Division, Attn: Jeremy Sussman, Esq., 201 Varick Street, Suite 1006, New York, New York 10014; (ii) counsel for Phoenix Growth Capital LLC, Ortiz & Ortiz, L.L.P., 35-10 Broadway, Suite 201, attn. Norma E. Ortiz , Esq.; (iii) any party whose interests are directly affected by the Motion; (iv) those persons who have formally appeared and requested notice and service in this Chapter 11 Case pursuant to Bankruptcy Rules 2002 and 3017; (v) the 20 largest unsecured creditors of the Debtor; (vi) all other parties required to receive service under Local Rule 2002-2. Due to the urgency of the circumstances surrounding this Motion and the nature of the relief in it, the Debtor respectfully submits that no further notice of this Motion is required.

## No Prior Request

41.     No prior request for the relief sought herein has been made to this or any other court.

## Conclusion

**WHEREFORE**, the Debtor respectfully requests entry of the Interim Order and, following the Final Hearing, entry of a Final Order, and such further relief as this Court may deem just and proper.

Dated: December 10, 2020
      New York, New York

**OFFIT KURMAN, P.A.**

By:     /s/ Michael T. Conway
        Michael T. Conway
        590 Madison Avenue, Sixth Floor
        New York, New York 10016
        Telephone: (929) 476-0041
        Facsimile: (212) 545-1656
        Michael.Conway@OffitKurman.com

        *Proposed Counsel for Debtor and Debtor in Possession*

**EXHIBIT A**

**(Budget)**

| | week 1 | week 2 | week 3 | week 4 | week 5 | week 6 | week 7 | week 8 | week 9 | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| Fosdick Back Rent | 50,000 | | | | | | | | | 50,000 |
| Molly Back Rent (estimate) | 4,000 | | | | | | | | | 4,000 |
| Transportation  From Molly to Amazon (estimate) | 3,500 | | | | | | | | | 3,500 |
| Transportation from Fosdick to Amazon (estimate) | 10,000 | | | | | | | | | 10,000 |
| Amazon Receiving and Storage Fees (estimate) | | | | 15,000 | | | | 14,000 | | 29,000 |
| Office Rent | 1,000 | | | | 1,000 | | | | 1,000 | 3,000 |
| Amazon Store Setup (estimate) | 12,000 | | | | | | | | | 12,000 |
| Payroll (estimate) | | | 6,500 | | | 6,500 | | | 6,500 | 19,500 |
| TOTAL | 80,500 | - | 6,500 | 15,000 | 1,000 | 6,500 | - | 14,000 | 7,500 | **131,000** |

**<u>Exhibit B</u>**

**(Interim Order)**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

_____

In re:                                                    Case No: 20-43932-jmm

FANCHEST, INC.,                                   Chapter 11

                    Debtor. [1]

_____

## **INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL**

Upon the Motion (the "Motion")[2] of the Debtor, by its proposed counsel, seeking entry of (1) an Interim Order authorizing the Debtor, pursuant to sections 105(a), 361, 362, 363(a), 363(c)(2)(3), 363(e), and 1107(a) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(b) and 9014, and Local Rule 4001-5, to utilize Cash Collateral, upon the terms and conditions set forth herein, pending a final hearing to be held before the Court on January __, 2021 at __:__ __.m. (the "Final Hearing") and (2) following the Final Hearing, a final cash collateral order permitting the use of Cash Collateral (the "Final Order"); an emergency hearing having been held and concluded before me on December 17, 2020 to consider the entry of this order authorizing the Debtor's interim use of Cash Collateral (the "Interim Hearing"); and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtor and its estate pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtor, its estate, its creditors and equity holders, and is essential for the continued operation of the Debtor's business; and after due deliberation having been had, and sufficient cause appearing therefore, and the Debtor having

---

[1] (Federal Tax Id. No. xx-xxx 3182).
[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

asserted for the purposes of this Interim Order that:[3]

1.      The Debtor filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code on November 6, 2020 (the "Petition Date").

2.      The Debtor is currently indebted to Phoenix in the approximate amount of between $350,000 and $400,000 (the "Prepetition Obligations") in connection with prepetition advances made by Phoenix pursuant to the loan documents between the parties.

3.      Evidence has been submitted in the form of the December 10, 2020 Declaration of James Waltz that the Debtor's inventory has a book value of more than $2,871,400, but there may be a market value of something less than book value, but in excess of the Prepetition Obligations.

4.      During the initial two (2) week period after the entry of this Order (the "Interim Period"), the estimated amount of expenses to be incurred by the Debtor is approximately $80,500.

5.      Phoenix appears to have a valid, perfected, and enforceable lien and security interest in the Debtor's assets, including all accounts receivables and proceeds and products therefrom (collectively, the "Prepetition Collateral").

NOW THEREFORE, upon the Motion, and the pleadings in this Chapter 11 Case, and the record of the proceedings held before this Court with respect to the Motion, this Court finds as follows:

6.      The Debtor has given notice of the Interim Hearing to: (i) the Office of the United States Trustee for the Eastern District of New York, Brooklyn Division, Attn: Jeremy Sussman, Esq., 201 Varick Street, Suite 1006, New York, New York 10014; (ii) counsel for Phoenix Growth Capital LLC, Ortiz & Ortiz, L.L.P., 35-10 Broadway, Suite 201, attn. Norma E. Ortiz ,

---

[3] Nothing asserted herein shall be used to prejudice or estop any party from subsequently contesting any of the factual assertions for any other purpose.

Esq.; (iii) any party whose interests are directly affected by the Motion; (iv) those persons who have formally appeared and requested notice and service in this Chapter 11 Case pursuant to Bankruptcy Rules 2002 and 3017; (v) the 20 largest unsecured creditors of the Debtor; (vi) all other parties required to receive service under Local Rule 2002-2. Due to the urgency of the circumstances surrounding this Motion and the nature of the relief in it (collectively, the "Notice Parties") by overnight mail, facsimile transmission and/or electronic mail on December 10, 2020 and that such notice represents sufficient and adequate notice of the Motion and the Interim Hearing pursuant to Bankruptcy Rules 4001(b) and 9014 and no further notice of, or hearing on the interim relief sought in the Motion is necessary or required.

7.      Consideration of the Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§157(b)(2)(A), (K), (M) and (O).

8.      This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

9.      No committee, examiner, or trustee has yet been appointed in this Chapter 11 Case.

10.     Good, adequate and sufficient cause has been demonstrated to justify the granting of the interim relief requested herein.

IT IS HEREBY ORDERED AS FOLLOWS:

11.     The Debtor is hereby authorized to use Cash Collateral in accordance with and to the extent set forth in this Interim Order as shown in the Budget annexed to the Motion as Exhibit "1" (the "Interim Budget") on an interim basis through and until January __, 2021, at 5:00 p.m. (Prevailing Eastern Time) (the "Interim Expiration Date"); *provided, however, that*, nothing in this Interim Order shall be deemed a waiver of the Debtor's right to seek additional use of Cash

Collateral or right of Phoenix to oppose such request.

12.     Pursuant to sections 361, 362, and 363 of the Bankruptcy Code, as adequate protection for any post-petition diminution in the value of the interests of Phoenix in the Prepetition Collateral, including, without limitation, such diminutions as may be caused by the imposition of the automatic stay of section 362(a) of the Bankruptcy Code and by the Debtor's use of the Prepetition Collateral and/or Cash Collateral, the Debtor (i) is hereby authorized to and does hereby grant to Phoenix, a valid, binding, enforceable and automatically perfected lien, and/or security interest (collectively, "Liens," and as so granted to Phoenix the "Replacement Lien")  in all of the Debtor's presently owned or hereafter acquired property and assets (collectively, to the extent acquired after the Petition Date, the "Post-Petition Collateral" and together with the Prepetition Collateral and the Cash Collateral, the "Collateral").

13.     Notwithstanding the foregoing, the Replacement Lien shall be subject to liens and other interests in property of the Debtor's estate existing as of the Petition Date that are both (i) valid, enforceable and not subject to avoidance by any trustee under the Bankruptcy Code; and (ii) senior under applicable non-bankruptcy law to, or encumber assets not encumbered by, the Phoenix liens in the Prepetition Collateral as of the Petition Date, if any.

14.     The automatic stay provisions of section 362 are hereby modified to permit (a) the Debtor to implement and perform the terms of this Interim Order, and (b) the Debtor to create, and Phoenix to perfect, the Replacement Lien. Phoenix shall not be required to file UCC financing statements or any other instruments with any other filing authority to perfect the Replacement Lien granted by this Interim Order or to take any other actions to perfect such liens, which shall be deemed automatically perfected by the docketing of this Interim Order by the Clerk of the Court. If, however, Phoenix shall elect for any reason to file, record, or serve any such financing

statements or other documents with respect to such liens, then the Debtor shall execute the necessary documents upon request, and the filing, recording, or service thereof (as the case may be) shall be deemed to have been made at the time of the commencement of this Chapter 11 Case on the Petition Date.

15.     Each of the following shall constitute an "Event of Default" for the purposes of this Interim Order:

- The Debtor's Chapter 11 Case is dismissed or converted to a case under chapter 7 of the Bankruptcy Code;

- A chapter 11 trustee or examiner with expanded powers is appointed in the Debtor's Chapter 11 Case;

- The Debtor cease's operations of its present business or takes any material action for the purpose of effecting the foregoing without the prior written consent of Phoenix, except to the extent contemplated by the Budget or otherwise approved by the Court;

- The Debtor expends any material amounts of funds or monies for any purpose other than those set forth in the Budget or as otherwise approved by the Court;

- The Debtor fails to comply with any of the terms of this Interim Order; or

- Except as may be authorized under this Court's Order or with prior written consent of Phoenix, the Debtor transfers Collateral or Cash Collateral to any non-Debtor.

16.     Any non-compliance or default with any term of this Interim Order shall not be deemed an Event of Default, unless Phoenix delivers written notice of such non-compliance or default to the Debtor's proposed counsel, at the following address: Offit Kurman, P.A., Attn: Michael T. Conway, Esq., 590 Madison Avenue, Sixth Floor, New York, New York 10022, and the non-compliance or default is not thereafter cured by the Debtor within five (5) business days after counsel's receipt of such written notice. Upon the occurrence of any Event of Default, Phoenix may move before this Court, on five (5) business days' notice to the Debtor, to terminate

the Debtor's use of Cash Collateral.

17.     From and after the date of this Interim Order and pending the Final Hearing and/or entry of any subsequent order, the Cash Collateral, shall not, directly or indirectly, be used to pay administrative expenses of the Debtor and its estate except for those operating expenses that are set forth in the Interim Budget or with the written consent of Phoenix.

18.     The terms and conditions of this Interim Order shall be (i) effective and immediately enforceable upon its entry by the Clerk of the Court notwithstanding any potential application of Bankruptcy Rules 6004(g), 7062, 9014 or otherwise; and (ii) not be stayed absent (a) an application by a party in interest for such stay in conformance with Bankruptcy Rule 8005 and applicable Local Rules, and (b) a hearing upon notice to the Notice Parties, Phoenix, the Office of the United States Trustee, and the Debtor's counsel.

19.     The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any orders which may be entered confirming any plan of reorganization or which may be entered converting any of this Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code or the appointment of a chapter 11 trustee, subject to the provisions of the Bankruptcy Code.

20.     The terms and provisions of this Interim Order, as well as the Replacement Lien and all other claims and liens granted by this Order, shall: (a) continue in this Chapter 11 Case or any superseding case under the Bankruptcy Code; (b) be valid and binding upon, and inure to the benefit of, Phoenix, the Debtor, and their respective successors and assigns, and all parties in interest, including, without any limitation, any official committee appointed in this Chapter 11 Case, chapter 11 trustee, chapter 7 trustee, responsible officer, examiner, estate administrator, or representative, or similar person appointed for the Debtor under any chapter of the Bankruptcy Code; and (c) continue, notwithstanding any dismissal of the Debtor's Chapter 11 Case (and any

such order of dismissal shall so provide), and such claims and liens shall maintain their priority as provided by this Interim Order until the Phoenix obligations are satisfied in full.

21.     The provisions of this Interim Order and the Debtor's right to use Cash Collateral shall expire on January __, 2021. unless extended by further order of this Court or by written consent of the parties "So Ordered" by the Court.

22.     The Debtor is directed to serve a copy of this Interim Order on the Office of the United States Trustee, the Notice Parties, counsel for Phoenix, and all parties filing a notice of appearance, by facsimile, e-mail or regular mail, on or before _____, 2020.

23.     The Final Hearing shall take place before this Court on January __, 2021 at :__ _.m.

24.     Objections or responses, if any, to the proposed Final Order shall be in writing, filed on the Court's electronic Docket, and served upon the Notice Parties and on the proposed attorneys for the Debtor, Offit Kurman, P.A., Attn: Michael T. Conway, Esq., 590 Madison Avenue, Sixth Floor, New York, New York 10022, as well as all parties appearing in this Chapter 11 Case, and the Clerk of this Court, no later than 4:00 p.m. (Prevailing Eastern Time) on January _____, 2021.