## Liquidation Analysis

In accordance with section 1126 of the Bankruptcy Code, the Court must find that each member of an impaired class of creditors and each member of an impaired class of interest holders has accepted the plan, or will receive or retain property of a value, as of the effective date of the plan, that is not less than the amount such creditor or interest holder would have received or retained if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. The Debtor believes that the Plan complies with this "best interests" test. As discussed below, a conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code, followed by a liquidation under Chapter 7, would engender higher expenses and risks than the reorganization contemplated by the Plan. When coupled with the inevitable delay caused by the appointment of a Chapter 7 trustee and the retention of the trustee's professionals, distribution to holders of Allowed Claims that will be delayed for an indefinite period.

A conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code would require the appointment of a trustee to conduct the liquidation of the Debtor. Such a trustee would likely have limited historical experience or knowledge of the Chapter 11 Case or of the Debtor's records, assets or former business. The fees charged by a Chapter 7 trustee and any professionals hired by the Chapter 7 trustee could impose additional administrative costs on the Debtor's estates that will not be incurred under the Plan and which will be paid ahead of allowed administrative, priority tax, secured and general unsecured claims. There would be no voluntary subordination by Helix Digital Inc. of its $1,597,635.71 secured claim so even if there were dollars remaining after payment of allowed administrative, priority tax and the Phoenix claim, there would not under any reasonable analysis be dollars remaining to fund payments to unsecured claims.

The liquidation analysis reveals that confirmation of the Plan is preferable to a liquidation under Chapter 7 of the Bankruptcy Code because creditors will receive more under the Plan than they would receive in a Chapter 7 liquidation by preserving the going-concern value of the Debtor and its assets. Further, conversion of the case to a later Chapter 7 case would necessarily occasion substantial delay associated with the trustee and its professionals educating themselves as to the particularities of the Debtor's estate. The Plan, in contrast, provides the most efficient mechanism for prompt and subsequent periodic distributions to holders of allowed claims, including the above-referenced agreement with Helix Digital Inc., holder of secured claim that would be completely subordinated to the Class 4 Dividend under the Plan, but would not exist in a Chapter 7 liquidation.

The following table reflects the estimated recoveries under both the Plan and under a liquidation under Chapter 7. As noted in this table, there is an estimated recovery under the Plan for all classes of claims, while there is merely a possibility of recovery under a Chapter 7 liquidation scenario for the administrative and priority claims, and a portion of the Phoenix claim through the sale of the Current Inventory.

| DESCRIPTION OF CLAIMS AND INTERESTS AND CLASSES AND ANTICIPATED AMOUNT OF ALLOWED CLAIMS | ESTIMATED RECOVERY UNDER THE PLAN | ESTIMATED RECOVERY UNDER A CHAPTER 7 LIQUIDATION |
|---|---|---|
| Administrative Expense Claims, Priority Tax Claims<br><br>Anticipated to be less than $75,000.00 on the Effective Date under the Plan. Under section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes. Each holder of an allowed administrative expense claim allowed under § 503 of the Code, will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. | 100% | Up to 100% |
| Class 1 - Priority claims<br><br>Anticipated to be less than $25,000.00 on the effective date under the Plan. | 100% | Up to 100% |
| Class 2 - Secured claim of Phoenix Growth Capital LLC<br><br>Anticipated to be not less than $315,819.96, but as yet this claim has not been filed. It is anticipated that this claim, when filed, will include interest and fees believed by Phoenix Growth Capital LLC to be recoverable from the Debtor. | 100% | Up to 100% |
| Class 3 - Secured claim of Helix Digital Inc.<br><br>Anticipated to be not less than $1,597,635.71, but as yet this claim has not been filed. It is anticipated that this claim, when filed, will include interest and fees believed by Helix Digital Inc. to be recoverable from the Debtor. | Up to 100% | Up to 20% |

| DESCRIPTION OF CLAIMS AND INTERESTS AND CLASSES AND ANTICIPATED AMOUNT OF ALLOWED CLAIMS | ESTIMATED RECOVERY UNDER THE PLAN | ESTIMATED RECOVERY UNDER A CHAPTER 7 LIQUIDATION |
|---|---|---|
| Class 4 - Non-priority unsecured creditors<br><br>Anticipated to be approximately $2,000,000.00. An Allowed General Unsecured Claim consists of pre-petition general unsecured claims not included in any other class, including, without limitation, (i) claims for goods and services delivered prior to the petition date, (ii) any claim arising out of the rejection of any executory contract, and (iii) all allowed claims not included in any other class and not secured by a charge against or interest in property in which the debtor's estate has an interest. in a chapter 7 liquidation situation, after taking into consideration the payments due administrative claimants, priority claimants and secured claimants, all funds expected to be recovered by a chapter 7 trustee would be exhausted and no funds are expected to be available for unsecured claims. | 14% subject to decrease on a dollar for dollar basis in the event the Class 2 Claim increases | 0% |
| Class 5 - Equity security holders of the Debtor<br><br>Class 5 consists of all persons or entities which claim to have an equity interest, of any nature, in the Debtor. This class will retain existing security interests, diluted to account for the conversion of $650,000.00 debt into equity at the rate of $16,250 = 1.00%. | Dilution of existing equity interests by up to 80% | 0% |