THIS STOCK PURCHASE AGREEMENT (THIS "AGREEMENT") HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), AND MAY NOT BE SOLD, TRANSFERRED OR OTHERWISE DISPOSED OF UNLESS A REGISTRATION STATEMENT UNDER THE ACT WITH RESPECT TO THIS AGREEMENT HAS BECOME EFFECTIVE OR UNLESS THE BUYER ESTABLISHES TO THE SATISFACTION OF FANCHEST, INC. THAT AN EXEMPTION FROM SUCH REGISTRATION IS AVAILABLE.

## STOCK PURCHASE AGREEMENT

Subject to the terms below and approval of the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"), as part of its Amended Plan of Reorganization (the "Plan"), Fanchest, Inc., a Delaware corporation (hereinafter "Debtor"), hereby agrees to sell and transfer to National NonProfit Corporation, a Rhode Island corporation or its nominee, whose address is Peacedale Mill Complex, #29, 1425 Kingstown Road, Wakefield, RI 02879 (the "Buyer"), 80% of the issued and outstanding, fully diluted common stock of the Debtor in exchange for the principal sum of Seven-Hundred, Three-Thousand, Eighty-Seven and 96/100 Dollars ($703,087.93), in lawful money of the United States of America (the "Purchase Price"), as hereinafter provided.

1. Debtor is a debtor-in-possession in a bankruptcy case filed by the Debtor pursuant to subchapter V of chapter 11 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") styled: *In re Fanchest, Inc.*, Case No. 20-43932-jmm (the "Bankruptcy Case").

2. The Debtor has previously filed a Plan of Reorganization in the Bankruptcy Case at Docket Number 69 to which the Debtor annexed, at Exhibit 2, its analysis of the expected net income it could earn during the three-year period following the confirmation and effective date of that Plan of Reorganization, $603,087.93, which the Debtor referred to as its "Disposable Income." It was anticipated that the Debtor would borrow from Buyer $650,000 through a DIP facility which would be used to pay its various creditor claims as well as provide certain operating income needed to restart the Debtor's business.

3. Based on conversations between Debtor's counsel and the United States Trustee's Office, as well as with Buyer and its counsel, the Debtor and the Buyer determined that this Agreement was a more appropriate way of resolving the payments needed to comply with the requirements of the Bankruptcy Code and obtain confirmation of the Plan.

4. This Agreement is, as stated above, subject to confirmation of the Plan by the Bankruptcy Court. In turn, the Plan will include a mechanism for the payment of a cash dividend of the Debtor's Disposable Income, as that term is defined in subchapter V of the Bankruptcy Code, estimated as of the date of the filing of the Plan, to three of its four classes of creditors (the Class 3 secured creditor under the Plan, Helix Digital Inc., has agreed to subordinate itself to the payments described in the Plan to Classes 1, 2 and 4. The Plan contemplates a Class 5 made up of the holders of equity interests in the Debtor. As set forth in Exhibit 2 of the Debtor's Plan of Reorganization, the Disposable Income is estimated to be $603,087.93.

5. The funds paid by Buyer to Debtor pursuant to this Agreement not required for payment of the allowed claims described in Classes 1, 2 and 4 of the Plan, shall be used to pay the Allowed Administrative and Priority Tax Claims described in the Plan, as well as to restart the business operations of the Debtor post-confirmation.

6. The holders of existing equity interests in Class 5 will have their equity interests diluted as a result of this Agreement by 80% it being the intent of the parties that upon consummation of this transaction through payment and court approval by a final nonappealable order Buyer shall own 80% of the issued and outstanding, fully diluted common stock of the Debtor. Buyer agrees it does not have a right to dilute, nor will it seek, further dilution of the holders of a Class 5 claim under the Plan, unless or until it has injected additional operating capital into the Debtor of at least US$600,000.00.

7. The Debtor and Buyer agree to execute such documents as are customary and reasonably necessary to effectuate the terms of this Agreement as their respective counsel may determine.

8. The provisions of this Agreement shall be construed according to the laws of the State of New York without regard to conflict of laws principles.

9. This Agreement shall be binding upon Debtor, Buyer and their successors and assigns, but only after approval of and entry of a non-appealable order by the Bankruptcy Court confirming the Plan.

10. Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Debtor's Plan.

                    FANCHEST, INC.
                    ("Debtor")


By: _____
        James Waltz, President


Address of Debtor:   155 Water Street
                            Brooklyn, NY 11201

NATIONAL NONPROFIT CORPORATION
("Buyer")

By: _____
Chris Crawford, President

Address of Buyer:   Peacedale Mill Complex, #29
1425 Kingstown Road,
Wakefield, RI 02879